1

2

3

4

5 IN THE UNITED STATES DISTRICT COURT FOR THE

6 EASTERN DISTRICT OF CALIFORNIA

7

8 | CERTAIN UNDERWRITERS AT | ) | 1:08-CV-718  AWI GSA
  | LLOYD'S OF LONDON, subscribing to | ) |
9 | certificate No. EPL-20044M, | ) | ORDER ON DEFENDANTS'
  | | ) | MOTION TO DISMISS
10 | Plaintiff, | ) |
  | | ) |
11 | v. | ) |
  | | ) |
12 | MANDELL, MENKES, & SURDYK, an | ) |
  | Illinois corporation, and LEONARD S. | ) |
13 | SURDYK, | ) |
  | | ) |
14 | Defendants. | ) |
  | | ) |
15 | _____ | ) |

16 | _____

17

18       This is a legal malpractice claim brought by Plaintiff Certain Underwriters at Lloyd's of

19 London against the law firm of Mandell, Menkes, & Surdyk and attorney Leonard Surdyk

20 (collectively "MMS").  The case stems from insurance coverage advice that Plaintiff received

21 from Defendants about a case in California.  Defendants are from Illinois, and Plaintiffs brought

22 a legal malpractice action against Defendants in Cook County Illinois Circuit Court ("Illinois

23 Court").  The Illinois Court dismissed that lawsuit on the basis that the statute of limitations had

24 run.  Plaintiff appealed, but later voluntarily dismissed its appeal.  Shortly before dismissing the

25 appeal, Plaintiff filed this malpractice suit in the Stanislaus County Superior Court.  Defendants

26 removed to this Court and now move to dismiss the case under Rule 12(b)(6) based on the

27 rulings of the Illinois Court.  For the reasons that follow, the motion to dismiss will be granted.

28

## LEGAL FRAMEWORK – RULE 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001); Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Newman v. Sathyavaglswaran, 287 F.3d 786, 788 (9th Cir. 2002); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004); Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994). But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Courts will not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Warren, 328 F.3d at 1139; Western Mining Council, 643 F.2d at 624. Furthermore, Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court has recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to reviewing only the complaint, but

may review materials which are properly submitted as part of the complaint and may take judicial notice of public records outside the pleadings.  See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)). In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).


**BACKGROUND**[1]

*Allegations Made In The Case At Bar*

Plaintiff retained MMS to act as a claims, monitoring, and coverage counsel for Plaintiff's nationwide employment practices insurance program.  Plaintiff issued an Employment Practices Liability insurance policy ("the Policy") to CLS, B&H, and Bright Development (collectively "CLS").  In August 2000, a suit was filed against CLS by the children of Lyn Bright for an alleged refusal to pay moneys owed.  In September 2000, CLS filed a cross complaint against Lyn Bright (managing partner of CLS), alleging breach of fiduciary duty, conversion, and constructive fraud.  In October 2000, a cross-complaint was filed against Lyn Bright by his sisters, who were partners in CLS.  In January 2001, Lyn Bright filed an amended cross-complaint that included thirteen causes of action, three of which were potentially covered by the Policy.  Later in January 2001, CLS tendered notice of Lyn Bright's amended cross-complaint. MMS wrote a letter on behalf of Plaintiff and accepted the defense of CLS against Lyn Bright's

---

[1]Defendants move the Court to take judicial notice of various documents.  The documents are filings, rulings, and transcripts from the Cook County Illinois Circuit Court and the Illinois Court of Appeals.  Plaintiff has filed no objection.  Accordingly, the Court will take judicial notice of the court documents and public records that have been presented by Defendants. See Fed. R. Evid. 201; Lee, 250 F.3d at 688-89.  Additionally, since Defendants are the only ones to have submitted exhibits, a reference to an "Exhibit" refers to defense exhibits.

cross-complaint.

In April 2003, MMS erroneously advised Plaintiff to file a Declaratory Relief Action ("DRA") in California against CLS seeking to recover defense costs incurred for the claims in Lyn Bright's cross-complaint that were not covered by the Policy.  The DRA was erroneous since *Buss v. Superior Court*, 16 Cal.4th 35 (1997)  requires an insurer to pay for both covered and non-covered causes of action as long as some of the claims are potentially covered.  Plaintiff filed a DRA on May 21, 2003, in California against CLS.

In response to the DRA, CLS filed a motion to stay that proceeding.  CLS argued that Plaintiff filed the DRA because it grew concerned about the legal fees being incurred.  CLS stated that they were nothing short of surprised and dismayed by Plaintiff's ambush.

The California court asked MMS as counsel for Plaintiff to wait until the underlying litigation was concluded before bringing the DRA, but expressed concern that the underlying litigation was only in embryonic stages.  In order to avoid prejudice to CLS and possible inconsistent factual determinations, the California court granted CLS's motion for stay and stayed the case pending resolution of the underlying litigation.  During the pendency of the stay, Plaintiff continued to pay CLS's defense costs in the underlying litigation.[2]

On December 19, 2005, Lyn Bright filed a second amended cross-complaint which dropped all causes of action that were potentially covered by the Policy.  As a result, in January 2006, Plaintiff sent a formal notice of withdrawal to CLS and ceased payment for further defense costs.

Of particular note, Plaintiff specifically alleges:

26.     The filing of the DRA constituted legal malpractice because it served no purpose and provided no benefit to [Plaintiff], particularly since it was stayed by the court until such time as the Underlying Litigation was resolved.  It served only to cause CLS to completely terminate all communication with [Plaintiff] during the pendency of the Underlying Litigation.

27.     While not necessarily unusual, the termination of communication is important because, during the pendency of the Underlying Litigation, documents were produced and depositions were taken that revealed [CLS] submitted material

---

[2]Apparently new counsel was obtained in March 2005, and new counsel reviewed MMS's records on May 10, 2005.  See Defendants' Exhibit C at pp. 7-8.

4

misrepresentations in the insurance policy applications.  These material misrepresentations would have, if known by [Plaintiff], permitted [Plaintiff] to unilaterally rescind the Policy without ever having to file a declaratory relief action.

28.     [Plaintiff] possess no other means of obtaining the documents which revealed [CLS]'s material misrepresentations because the DRA had been stayed until the Underlying Litigation resolved.  Thus, [Plaintiff]'s access to the relevant documents turned wholly on the goodwill of [CLS]'s counsel, and MMS destroyed that goodwill by employing the DRA.

29.     As it was, [Plaintiff] was not given access to the documents produced and the transcripts of the depositions taken until such time as the Underlying Litigation had concluded.  The reason [Plaintiff] was not given access to those documents is because MMS filed the purposeless DRA, so angering [CLS] that [CLS] terminated all communications with [Plaintiff].

30.     To exacerbate matters, the filing of the DRA in and of itself foreclosed [Plaintiff]'s ability to unilaterally rescind the Policy, since unilateral rescission is not available once an "action on the contract" is commenced.

31.     MMS's malpractice relates to the very procedure of filing the DRA, which (a) prevented Underwriters from determining the existence of grounds for immediate rescission of the Policy until after the Underlying Litigation was resolved and [CLS] permitted [Plaintiff] to review a limited amount of documents and transcripts from the Underlying Litigation; and (b) prevented [Plaintiff] from immediately rescinding the Policy even if such information had been available.

32.     MMS breached its duty to Underwriters by advising Underwriters to file a fruitless DRA and such breach proximately caused damages – the loss of access to information that would support immediate rescission – to [Plaintiff].

33.     As a result of the erroneous coverage advice by Defendants, [Plaintiff] incurred general and special damages which included but are not limited to attorneys' fees and costs to file and prosecute the improper [DRA].
. . . .

42.     . . . MMS's erroneous and fruitless DRA prevented [Plaintiff] from discovering the existence for grounds for unilateral and immediate rescission . . . after the Underlying Litigation was resolved.  Not only did the DRA alienate [CLS]'s counsel, which precluded [Plaintiff]'s access to documents in the Underlying Litigation, but since the DRA was stayed by the court, [CLS] did not have ability to conduct discovery and obtain these documents and deposition transcripts which reveal the misrepresentations.

Court's Docket Doc. No. 1-3 at ¶¶ 26-33, 42; see also ¶¶ 46-53, 57-65.

_Allegations Made In Illinois Action_

From the Complaint filed in the Illinois case, in pertinent part Plaintiff alleged:

42.     In or about April 2003, Defendants erroneously advised Underwriters to file a declaratory relief action seeking to recover defense costs incurred against B&H for non-covered claims asserted in the Bright Cross-Complaint.  Such advice was erroneous as _Buss_ requires the insurer to pay for both covered and

non-covered causes of action as long as some of the claims are potentially covered.

43.     Said Declaratory Relief action was filed on May 21, 2003. . . .
. . . .[3]

49.     The California Court granted a stay of the [DRA] pending the outcome of the underlying litigation.  During the California Court's imposed stay of the [DRA], Underwriters continued to pay for all defense costs as advised by Defendants.

50.     As a result of the erroneous coverage advice by Defendants, Underwriters incurred general and special damages which include but are not limited to attorneys fees and costs to file and prosecute the improper [DRA].

Exhibit A at pp. 13-14.

_Initial Hearing & Ruling of the Cook County Court_

Defendants filed a motion to dismiss Plaintiff's complaint on the grounds that Plaintiff's claims of legal malpractice were barred by the statute of limitations and the statute of repose.  On December 11, 2007, after reviewing the arguments and declarations filed in relation to the motion to dismiss, the Illinois Court held a hearing on the motion.  As part of the oral arguments made by Plaintiff to the Illinois Court, Plaintiff's counsel stated:

To analyze this file properly, you needed the documents from the defense counsel, from [CLS's] counsel in California because those documents would allow you to understand what had happened in the case and what had gone wrong with it.  Only in 2007 was [the Underlying Litigation] settled.  At that point, the confidentiality order was apparently off, and [new counsel] Ms. Zaroski was able to read not only the boxes she got from [MMS], she was able to read that in connection with the documents she got from [CLS's counsel].  And that is the date upon which the statute started to run.

Exhibit C at pp. 16-17.

After considering the arguments and evidence submitted, the Illinois Court ruled:

I believe that being new counsel in April of 2005, [Ms. Zaroski] was under an obligation to look through these files at that point and that this was not according to her deposition; that I believe the date for the statute of limitations starts from the May 10th [2005] date when the files were transferred and that the lawsuit needed to be filed by May 10th of 2007.  So I believe there is a violation of the statute of limitations.  So that I will grant the motion to dismiss based on the statute of limitations violation.

Id. at p. 23.

---

[3]The omitted paragraphs detail three specific allegations made by Plaintiff in the Declaratory Relief action and aver/explain that each of these three allegations are contrary to the _Buss_ decision.

*Arguments Made To The Illinois Court In Support of Rehearing/Reconsideration*

Plaintiff filed a motion for rehearing with the Illinois Court and requested reconsideration of the Illinois Court's finding that the statute of limitations began to run on May 10, 2005.  The motion for rehearing in relevant part reads:

> The Underwriters respectfully suggest that the Court's error lies in a misunderstanding of the allegations of legal malpractice.  The Underwriters' malpractice claim against MMS derives from MMS's advice to the Underwriters that the Underwriters file a declaratory judgment action against [CLS (collective defendants)] in April 2003.  The [DRA] was an outgrowth of Underlying Litigation involving CLS.
>
> The filing of the [DRA] constituted legal malpractice because, under the law of California, it served no purpose and provided no benefit to the Underwriters, particularly since it was stayed by the court until such time as the underlying litigation was resolved.  More importantly to this action, it served only to cause CLS to completely terminate all communication with the Underwriters during the pendency of the Underlying litigation.
>
> While not necessarily unusual, the termination of communication is important because, during the pendency of the underlying litigation, documents were produced and depositions were taken that revealed that CLS submitted material misrepresentation in its policy application.  *See*, Exhibit "A," Affidavit of Laura R. Zaroski.  These material misrepresentations would have, if known by the Underwriters, permitted the Underwriters to unilaterally rescind the subject policy pursuant to California statute, without ever having to file a declaratory judgment action.
>
> To be clear, the documents and deposition transcripts that would have supported unilateral rescission were not contained in those boxes received by the Underwriters' successor counsel from MMS in April or May 2005.  *See* Exhibit A.  Moreover, the Underwriters possessed no other means of obtaining those documents because the court presiding over the [DRA] had stayed that action until the Underlying Litigation resolved.  *See* Exhibit A.  Thus, the Underwriters' access to the relevant documents turned wholly on the goodwill of CLS's counsel, and MMS destroyed that goodwill by employing the [DRA].
>
> As it was, the Underwriters were not given access to the documents produced and the transcripts of depositions taken until such time as the underlying litigation had concluded: April 2007.  *See* Exhibit A.  And the reason the Underwriters were not given that access is because MMS filed the purposeless [DRA], so angering CLS that CLS terminated all communications with the Underwriters until April 2007. *See* Exhibit A.  To exacerbate matters, the filing of the [DRA] in and of itself foreclosed the Underwriters' ability to unilaterally rescind the subject policy, as pursuant to California statute the remedy of unilateral rescission of a policy is not available while other litigation concerning the policy is pending.
>
> Thus, MMS's malpractice does not relate to the Coverage Letter.  That letter affects only policy defenses that may have been available to the Underwriters, and pursuant to the law of California the existence of such policy defenses would not immediately relieve the Underwriters from their defense and indemnity obligations.  Nor is MMS's malpractice found in the substance of the [DRA], as

that action requests and apportionment of defense costs incurred in the Underlying litigation.

Instead, MMS's malpractice relates to the very procedure of filing the Declaratory Judgment Action, which (a) prevented the Underwriters from determining the existence of grounds for immediate rescission of the subject policy until April 2007, and (b) prevented Underwriters from immediately rescinding the subject policy even if such information had been available. In other words, MMS breached a legal duty owed to the Underwriters by advising the Underwriters to file a fruitless [DRA] and such breach proximately caused damages – the loss of access to information that would support immediate rescission – to the Underwriters.

Neither the statute of limitations nor the statute of repose bars that claim from proceeding. The statute of limitations did not begin to run until April 2007, when the Underwriters were first given access to documents and other evidence that support unilateral rescission. Because the instant malpractice action was filed within two years of April 2007 . . . this action does not violate that statute. . . .

Exhibit D at pp. 2-4

Consistent with the above arguments, Plaintiff made the following arguments at the hearing:

Your honor ruled . . . that the delivery of those boxes [to new counsel on May 10, 2005] started the statute of limitations, the two year statute. Now, the boxes are said by the defendants to have shown the legal malpractice case, if there was one, and, therefore the delivery of the boxes should be considered as discovery. The boxes did not contain . . . the evidence that the underlying insured should never have had the policy in the first place. The boxes did not contain the CLS documents. Those documents were only obtained in April of 2007.
. . .

But the fact is that the CLS documents revealed a cause of action for legal malpractice . Those CLS documents were not available until April '07. We allege that it is the fault of the defendants that they were not available because defendants filed a meaningless declaratory action under California law which led to a paralyzing of the flow of information from CLS to [Plaintiff] and, therefore, stopped any information from coming either to [MMS], who were our attorneys, or, of course, to [CLS].

Now, if it's correct . . . that the documents which made a legal malpractice case were not in the boxes delivered on May the 10th, but by neglect or failure to adhere to the standards of care of the defendants were not even known until April 2007, that our statute should only start running in April 2007. And, of course, we filed four months after that.
. . . .

Judge, the statute of limitations started running with discovery of the facts that would make the defendant liable. That discovery occurred in April '07, not in May of '05, as we thought when we had the first argument.
. . .

8

It all relates to when we know we had a case.  And we did not know we had a case until April '07.
. . .

But we know of the injury.  We knew of the injury.  We knew we paid out all the money.  But we didn't know that it was [MMS]'s fault . . . that it was paid out.

So what we have here then - - also, we have a California code provision . . . that says that you have the right to rescind the policy unilaterally until a cause of action is filed on the policy.  Now, having that right, they went and filed a cause of action on the policy.  That was done in '03.  And we did not know how much that the filing had damaged us until '07.  So I would contend that we're clearly within the statute of limitations and that . . . the '03 act of negligence in filing this lawsuit that froze . . . the information is well within repose.

Exhibit E at pp. 3-5, 13-15.

### _Ruling of the Cook County Court On Reconsideration_

After hearing arguments from the parties, which included briefing and declarations, the

Illinois Court ruled:

That the plaintiff has asserted that its malpractice claim against defendants actually derives from defendant's advice to plaintiff that plaintiff should file the [DRA] against certain parties commonly – or collectively known as CLS in April of 2003.

And that this [DRA] constituted legal malpractice because it served no legal purpose for the plaintiffs and, additionally, resulted in CLS cutting off communications with the defendants and, later, the successor counsel, Zaroski.

This is important, according to plaintiff, because had CLS not cut off communications, Zaroski would have allegedly come into possession of information of the underlying litigation.

As it stands, because of the [DRA], the plaintiff contends successor counsel didn't come into possession of this information until April '07 at the end of this underlying litigation.

And basically, in other words, if the defendants did not negligently advise the plaintiff to file the [DRA], plaintiff would have come into possession of the information that would have allowed it to terminate the insurance policy.

However, because of the [DRA], that information was required to remain confidential, and even though Zaroski got certain files in May of 2005, she did not come into complete possession of all the necessary information until April '07.

However, looking at the plaintiff's argument, if the plaintiff is correct in its assertion that the filing of a dec action constituted legal malpractice because, under the law of California it served no purpose and provided no benefit to the plaintiff and, as stated in different portions of the memo, that was fruitless, purposeless, and improper, then Ms. Zaroski's successor counsel knew or reasonably should have known that the filing of the dec action was improper and constituted malpractice when she reviewed the files on May 10, 2005.

9

In fact, the [DRA] itself, regardless of its substance, did not protect the plaintiff's interests and did not further its goals under California law by filing this insured [DRA] against – on a policy meant to accomplish little or anything in the memo to the plaintiff.

And, as a matter of fact, Ms. Zaroski should have known when she reviewed the case files on May 10, 2005, that the [DRA] was improper.  She should have recommended to the plaintiff to withdraw this, yet this was not done.

That Ms. Zaroski didn't need to access information to understand the mere filing of the [DRA] was fruitless, purposeless, and improper, as stated in the memo.

And yet upon receiving the file in 2005, she renewed that this action was such, so that had she done this, the plaintiff would have withdrawn or terminated the [DRA] and would have learned the information allowing the rescinding of the policy well in advance of [] April 2007.

So I believe my ruling previously is correct.  So at this point I'll deny the motion for the rehearing.

Exhibit E at 15-18.[4]

## DEFENDANTS' MOTION

### *Defendants' Arguments*

Defendants argue, *inter alia*, that collateral estoppel applies to bar this lawsuit.  The Illinois Court dismissed the same claims made by Plaintiff in the case at bar.  The motion to dismiss sought dismissal on the basis of the statute of limitations, was fully briefed and argued by the parties, the judge issued a well reasoned opinion that the statute of limitations barred the lawsuit, and Plaintiff appealed the decision but later dismissed the appeal.  The rulings made by the Illinois court were firm and are now final, and the issue of the statute of limitations was actually and necessarily litigated and decided.  Plaintiff cannot disregard the rulings of the Illinois Court regarding the statute of limitations and now attempt to obtain inconsistent holdings from this court.  Collateral estoppel on the issue of statute of limitations applies to bar this suit.

### *Plaintiff's Opposition*

Plaintiff argues that collateral estoppel does not apply for three reasons.  First, the issues in this case are different from the issues in the Illinois case.  The Illinois complaint alleges that

---

[4]This ruling and the Illinois Court's prior statute of limitations ruling were appealed on April 30, 2008.  <u>See</u> Exhibit F.  On June 12, 2008, the appeal was dismissed pursuant to Plaintiff's request.  <u>See</u> Exhibit G.

MMS committed malpractice when it failed to properly: determine whether CLS was covered under the Policy for the claims asserted in the cross-complaint, reserve Plaintiff's rights under the Policy, instruct Plaintiff to pay defense costs, properly analyze *Buss* to determine the appropriate timing as to when defense costs can be apportioned between covered and non-covered claims, and investigate the accuracy of CLS's responses to questions on the Policy application.  Thus, the basis of the Illinois action was improper coverage advice by MMS and the factual allegations ended with the filing of the DRA.  In contrast, the allegations in the case at bar go to the effect of the improper DRA, that is, that the DRA prevented Plaintiff from discovering material misrepresentations in the Policy application and precluded Plaintiff from unilaterally rescinding the Policy.  The factual allegations in the California case start with the filing of the DRA.  Thus, the issues in the two cases are not identical.

Second, in order for collateral estoppel to apply, there must be a judgment on the merits.  When a dismissal is based on the statute of limitations, the dismissal is not on the merits and has no *res judicata* effect.  See Finnie v. District No. 1 – Pacific Coast Dist, Marine Engineers' Beneficial Ass'n, 9 Cal.App.4th 1311, 1319 (1992).  The Illinois judgment is not a judgment on the merits.

Third, the Illinois judgment has no effect because California law should apply.  California has a stronger interest than Illinois because the case involves a California policy and California insureds, the DRA was filed in California, MMS was analyzing California law, and the events that would have lead to the discovery of the ability to rescind occurred in California.  Under California law, the statute of limitations for legal malpractice is one year from the date that the Plaintiff discovers or through reasonable diligence should have discovered the facts constituting the wrongful act or omission.  The complaint alleges that Plaintiff could not discover the effect of the DRA until May 2007.  As the California case was filed in April 2008, this case is timely.

*Legal Standard – Collateral Estoppel*

"Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings."  Pacific Lumber Co. v. State Water Resources Control Bd., 37 Cal.4th 921, 943 (2006); Lucido v. Superior Court, 51 Cal.3d 335, 341 (1990).  In order for collateral estoppel to

apply, five requirements must be met: (1) the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; (2) the issue must have been actually litigated in the former proceeding; (3) the issue must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. Pacific Lumber, 37 Cal.4th at 943; Lucido, 51 Cal.3d at 341. The first requirement, "identical issue," addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." Lucido, 51 Cal.3d at 342; Castillo v. City of Los Angeles., 92 Cal.App.4th 477, 481 (2001). As for the second requirement, an issue is "'actually litigated' when it is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined . . . ." People v. Sims, 32 Cal.3d 468, 484 (1982); Castillo, 92 Cal.App.4th at 482. An "issue" includes "any legal theory or factual matter which could have been asserted in support of or in opposition to the issue which was litigated." Border Business Park, Inc. v. City of San Diego, 142 Cal.App.4th 1538, 1566 (2006). This means that "collateral estoppel [applies to] . . . issues which were raised, even though some factual matters or legal arguments which could have been presented were not." Id. The third requirement, that an issue was "necessarily decided," has been interpreted to mean that the issue was not "entirely unnecessary" to the judgment in the prior proceeding. Lucido, 51 Cal.3d at 342; Castillo, 92 Cal.App.4th at 483. With respect to the fourth requirement, "'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Border, 142 Cal.App.4th at 1564; McClain v. Rush, 216 Cal.App.3d 18, 28 (1989). "A prior adjudication of an issue in another action may be deemed 'sufficiently firm' to be accorded preclusive effect based on the following factors: (1) whether the decision was not avowedly tentative; (2) whether the parties were fully heard; (3) whether the court supported its decision with a reasoned opinion; and (4) whether the decision was subject to an appeal." Border, 142 Cal.App.4th at 1566; Sandoval v. Superior Court, 140 Cal.App.3d 932, 936 (1983). A decision is "on the merits" when the substance of the issue is tried and determined. See Burdette v. Carrier Corp., 158 Cal.App.4th 1668, 1682, 1689 (2008);

1  Castillo, 92 Cal.App.4th at 483; McClain, 216 Cal.App.3d at 28-29; Smith v. Smith, 127

2  Cal.App.3d 203, 208 & n.5 (1981); MIB, Inc. v. Superior Court, 106 Cal.App.3d 228, 231

3  (1980); Beverly Hills Nat'l Bank v. Glynn, 16 Cal.App.3d 274, 286 (1971).  Finally, the fifth

4  requirement of identity of parties or privity "is a requirement of due process of law."  Mooney v.

5  Caspari, 138 Cal.App.4th 704, 717 (2006).  Privity may be based on a mutual or successive

6  relationship to rights of property, a sufficiently close identification in interests between persons,

7  or a relationship that is "sufficiently close" so as to justify application of collateral estoppel.  See

8  id.  The party asserting collateral estoppel bears the burden of establishing these five

9  requirements.  Pacific Lumber, 37 Cal.4th at 943; Lucido, 51 Cal.3d at 341.

10  However, before concluding that collateral estoppel should be applied in a particular case,

11  courts are to examine the public policies underlying collateral estoppel in relation to the

12  particular case.  Pacific Lumber, 37 Cal.4th at 943; Lucido, 51 Cal.3d at 341.  The public policies

13  underlying collateral estoppel are to promote judicial economy by minimizing repetitive

14  litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system,

15  and to protect against vexatious litigation.  Lucido, 51 Cal.3d at 343; California Physicians

16  Service v. Aoki Diabetes Research Institute, 163 Cal.App.4th 1506, 1519 (2008).

17  *Discussion*

18  The application of the defense of the statute of limitations was determined by the Illinois

19  Court.  Specifically, the Illinois Court held that Plaintiff knew or should have known that filing

20  the DRA was malpractice that caused injury as of May 10, 2005.  See Exhibit C at 23; Exhibit E

21  at 18.  Under Illinois law, the statute of limitations ran on Plaintiff's legal malpractice claims on

22  May 10, 2007.  Since the Illinois case was filed in August 2007, it was dismissed as time barred.

23  The key determination made by the Illinois Court for purposes of this case was the finding that

24  Plaintiff knew or should have known that it was harmed by the negligent filing of the DRA on

25  May 10, 2005.  As to this finding, the elements of collateral estoppel have been met and the

26  policies behind collateral estoppel favor dismissal.

27  First, with respect to identical issues, both the Illinois complaint and the California

28  complaint allege that MMS erroneously advised Plaintiff to file the DRA, that the DRA action

13

was stayed pending resolution of the underlying litigation between CLS and Lyn Bright, that the DRA's requested relief was improper under *Buss*, and the Plaintiff suffered general and specific damages as a result of MMS's advise.  Cf. Exhibit A at ¶¶ 42-50 with Court's Docket Doc. No. 1-3 at ¶¶ 17-22, 25, 33.  The factual allegations clearly involve the advise to, and the filing of, the DRA, and by alleging and explaining how the advice to file the DRA was erroneous, the propriety of the DRA was put at issue in the Illinois case.  It is true that the California complaint is more detailed and expressly states that the filing of the DRA was malpractice and had the effects of: (a) stopping the flow of information between Plaintiff and CLS's counsel and thereby preventing discovery of facts that warranted rescission; (b) terminating Plaintiff's ability to rescind the Policy.  See Court's Docket Doc. No. 1-3 at ¶¶ 26-33, 42, 46-53, 57-65.  However, as Defendants rightly point out, this precise allegation was made directly to the Illinois Court. Plaintiff argued to the Illinois Court that there was a misunderstanding of the malpractice allegations and that its claims of malpractice actually included the procedure of filing the DRA, which prevented Plaintiff from learning of grounds for rescission and lost Plaintiff's right to rescind.  See Exhibit D at pp. 2-4.  The act and the effects of filing the DRA, that is the loss of the ability to rescind and the ability to learn of facts that justified rescission (loss of information), and the date the statute of limitations for such conduct began, were at issue in the Illinois case and are at issue in this case.  Therefore, there is an identical factual background on the issue of when the statute of limitations began to run with respect to the DRA and its effects.  Lucido, 51 Cal.3d at 342; Castillo, 92 Cal.App.4th at 481.

Second, there is no doubt that the issue of when the statute of limitations began to run with respect to the DRA and its effects was "actually litigated."  As outlined in detail above, the entire basis of the motion for reconsideration was how the statute of limitations applied to the DRA and the two effects identified by Plaintiff.  See Exhibit D.  Evidence was presented to the Illinois Court, the issue was briefed, and oral arguments were made at a hearing.  See id.  Further, as outlined above, the Illinois Court specifically ruled on the statute of limitations for the legal malpractice claims associated with the DRA and its effects and held that the statute began to run on May 10, 2005.  See Exhibit E.  Since the issue was actually litigated and actually decided by

1  the Illinois Court, factual and legal arguments that could have been made regarding the statute of

2  limitations and the DRA are considered to have been part of the issue actually decided.  See

3  Border, 142 Cal.App.4th at 1566.  The second requirement is met.

4         Third, the issue of the statute of limitations as applied to the DRA and its effects was

5  "necessarily decided."  The issue was necessarily decided because it was the basis of the

6  reconsideration proceedings.  Thus, it was not "entirely unnecessary" to the Illinois proceedings.

7  See Castillo, 92 Cal.App.4th at 400.

8         Fourth, the decision by the Illinois Court is firm and final.  The ruling was not tentative

9  and terminated the proceedings, the judge explained his rationale, the parties were fully heard,

10  and an appeal was taken but later dismissed; the ruling is therefore final.  See Border, 142

11  Cal.App.4th at 1566.  Plaintiff, however, contends that collateral estoppel does not apply because

12  the dismissal on the basis of statute of limitations is not a judgment on the merits.  Plaintiff is

13  correct that for purposes of *res judicata*, which precludes relitigation of an entire cause of action,

14  see Mycogen Corp. v. Monsanto Co., 28 Cal.4th 888, 896 (2002), dismissal due to the statute of

15  limitations is not a judgment on the merits under California law because it does not address the

16  substance of the underlying cause of action.  See Koch v. Rodlin Enterprises, 223 Cal.App.3d

17  1591, 1595-96 (1990).  However, the Illinois court did not rule on the substance of the

18  underlying malpractice claim and MMS does not argue that it did.  Rather, the Illinois court ruled

19  on the substance of the statute of limitations issue with respect to the DRA and its effects.  It is to

20  that issue, not the underlying merits/substance of the malpractice action, upon which MMS's

21  collateral estoppel argument rests.

22         *McClain v. Rush* is a case where collateral estoppel was successfully applied to the

23  *issue* of the running of the statute of limitations.  See McClain, 216 Cal.App.3d at 28-29.  The

24  *McClain* court concluded, "for purposes of 'issue preclusion' in the motion for judgment on the

25  pleadings, McClain was properly prevented from any reconsideration of the statute of limitations

26  question by the appropriate application of the collateral estoppel doctrine."  Id. at 28.  The

27  *McClain* court's collateral estoppel rationale was explained as follows:

28         The application of the foregoing precepts to the case at bar shows the statute of

limitations defense was successfully asserted by realtors (who were alleged to be and were in fact agents for vendors). McClain was an adversary of the realtors, the Bank and the vendors at all times in the case as Code of Civil Procedure section 1910[5] requires as a prerequisite to the application of res judicata or collateral estoppel. The August 10, 1984, judgment on the summary judgment of realtors became final for purposes of "issue preclusion" when remittitur in the bank's appeal occurred, although no formal final judgment may thereafter have been entered on either summary judgment which could have allowed resort, without question, to the res judicata doctrine. Even if no formal final judgment was ever so rendered, the lack of any rendition thereof is not relevant to the applicability of the doctrine of collateral estoppel to prevent relitigation of the trial court's final application of the statute of limitations in vendors' favor, which was correctly adapted from the 1984 opinion of the trial court and embodied, as evidence of such, in the minute order previously made on July 27, 1984.

Id. at 29; see also id. (holding that two orders were "appropriate to establish collateral estoppel against McClain by the Rushes from McClain's relitigating the statute of limitations question.").

As *McClain* shows, simply because the statute of limitations is involved does not automatically negate collateral estoppel. Collateral estoppel precludes "relitigating the very question which was litigated in the prior action." Lucido, 51 Cal.3d at 34; Smith, 127 Cal.App.3d at 207-08. "Although, where the judgment for the defendant is not on the merits [of the cause of action], the plaintiff is not precluded from maintaining a new [suit] on the same cause of action, *he is precluded from relitigating the very question which was litigated in the prior action.*" Smith, 127 Cal.App.3d at 208 n. 5 (quoting Restatement of Judgment § 49 (1942)) (italics in original). Because the substance of the statute of limitations issue was decided by the Illinois Court, the judgment was on the merits of the statute of limitations issue.[6] See Burdette, 142 Cal.App.4th at 1689; McClain, 216 Cal.App.3d at 28-29; Smith, 127 Cal.App.3d at 208-09; MIB, 106 Cal.App.4th at 233-35. The fourth requirement is satisfied. See id.

Fifth, privity is not a concern because these exact parties litigated the statute of limitations issue as it applied to the DRA and its effects in the Illinois Court. In Illinois, it was MMS who argued in favor of the running of the statute of limitations, and it was Plaintiff who argued that the statute of limitations with respect to the DRA and its effects did not start to run until 2007.

---

[5]This section deals with whether parties may be deemed "the same." Cal. Code Civ. Pro. 1910.

[6]*Finnie* is unpersuasive because that case was not a collateral estoppel case. Finnie, 9 Cal.App.4th at 1319.

1    Additionally, the policy reasons that underlie collateral estoppel support its application.

2    As the detailed excerpts from the various proceedings amply show, the case at bar is the carbon

3    copy of the claims and allegations made to the Illinois Court in the reconsideration proceeding.

4    Applying collateral estoppel therefore would save judicial resources by preventing repetitive

5    litigation.  Also, if the Court were not to apply collateral estoppel and were to adopt Plaintiff's

6    position that it discovered or should have discovered the malpractice associated with the DRA

7    and its effects in May 2007, such a ruling would be inconsistent with the Illinois Court's

8    judgment.  Finally, since the complaint in this case is based on the motion for reconsideration

9    filed with the Illinois Court, cf. Court's Docket Doc. No. 1-3 with Exhibit D, and since Plaintiff

10   abandoned the Illinois judicial system after encountering adverse rulings, this case smacks of

11   forum shopping and vexatious litigation.

12    In opposition, Plaintiff argues that the California statute of limitations law should apply

13   to this case and, since the Illinois Court applied Illinois law, its holdings are irrelevant.   It is

14   unnecessary to determine whether Illinois or California statute of limitations law applies because

15   the result in this case does not change.[7]

16   The California statute of limitations for legal malpractice is "one year after the plaintiff

17   discovers, or through reasonable diligence should have discovered, the facts constituting the

18   wrongful act or omission . . . ."  Cal. Civ. Code § 340.6.  Under Illinois law, a suit for legal

19   malpractice "must be commenced within 2 years from the time the person bringing the action

20   knew or reasonably should have known of the injury for which damages are sought."  735 ILCS

21   5/13-214.3.   Also, under both Illinois and California law, a legal malpractice claim does not

22   accrue until the plaintiff suffers actual and appreciable damage that is not speculative.  See Tri-G,

23   Inc. v. Burke, Bosselman & Weaver, 222 Ill.2d 218, 225-26 (2006); Budd v. Nixon, 6 Cal.3d

24   195, 200-01 (1971).  Accordingly, both statutes of limitations are based on when a plaintiff

25

26        [7]The Court has misgivings that California law applies.  The case at bar involves a non-California plaintiff
27   who sought out an Illinois law firm for advice on a California law issue.  At first blush, it would seem that Illinois
     has a greater interest in regulating Illinois licensed attorneys since no party is from California.  Further, if Plaintiff
28   really thought that California law should apply, then it is strange that it filed suit first in Illinois and then only argued
     the application of Illinois law.

learns or should have learned that wrongful conduct (malpractice) caused actual harm/injury. See York Woods Cmty. Ass'n v. O'Brien, 353 Ill.App.3d 293, 298 (2004) ("[T]he two-year period does not necessarily begin the day the plaintiff suffers his injury; rather, the period starts when the plaintiff knows or should know facts that would cause him to believe that his injury was wrongfully caused."); Sirott v. Latts, 6 Cal.App.4th 923, 928 (1992) ("[T]he one-year statute of limitations for legal malpractice does not begin to run simply when the plaintiff knows, or should know, of the attorney's negligence; the plaintiff also must sustain actual and appreciable harm.").[8]

As discussed above, the Illinois Court, after hearing Plaintiff argue that its malpractice claim included the DRA and the loss of information and loss of the ability to rescind that was caused by filing the DRA, held that the statute of limitations for such a claim began to run on May 10, 2005.  See Exhibit E.  That is, the Illinois Court determined that Plaintiff knew or should have known that it was actually injured/harmed by the wrongful filing of the DRA on May 10, 2005.  This is the key finding that must be made under both California and Illinois law for determining when the statute of limitations begins.  The Illinois Court's determination means that the statute of limitations for Plaintiff's legal malpractice claim regarding the DRA and its effects expired on May 10, 2007, under Illinois law, see 735 ILCS 5/13-214.3, and expired on May 10, 2006, under California law.  See Cal. Civ. Code § 340.6.  Plaintiff filed this California lawsuit in 2008.  Because collateral estoppel applies to the Illinois Court's finding that Plaintiff knew or should have known that it suffered injuries/damages from the filing of DRA on May 10, 2005, and since this is the finding that determines when the statute of limitations begins to run under both Illinois and California law, the filing of this lawsuit in 2008 means that Plaintiff's legal malpractice claim is time barred under both Illinois and California law.

[8]Additionally, under California law, "The cause of action [for legal malpractice] arises … before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. . . .  Indeed, once having discovered his attorney's negligence and having suffered some damage, the client must institute his action within the time prescribed in the statute of limitations or he will be barred from thereafter complaining of his attorney's conduct."  Budd, 6 Cal.3d at 201; Sirott, 6 Cal.App.4th at 930.

1          **CONCLUSION**

2          MMS moves to dismiss this case under Rule 12(b)(6) through application of the collateral

3    estoppel doctrine.  Prior to filing this case, Plaintiff filed a legal malpractice suit in Cook County

4    Illinois.  The Illinois Court held that the statute of limitations for Plaintiff's malpractice claim,

5    that is that the filing of the DRA was wrongful and caused it to lose access to information and

6    lose the ability to rescind, began to run on May 10, 2005.  The elements of collateral estoppel

7    apply with respect to this ruling: the issue is identical between the Illinois case and this case, the

8    issue was actually decided, the issue was necessarily decided, the decision on the issue was on

9    the merits and final, the identical parties litigated the issue, and the policies behind collateral

10   estoppel favor its application.  Further, regardless of whether Illinois or California statute of

11   limitations law applies, the Illinois Court made the key finding that both laws require:  Plaintiff

12   learned or should have learned that it had suffered injury/damage from the wrongful filing of the

13   DRA on May 10, 2005.  This finding means that the statute of limitations on Plaintiff's legal

14   malpractice claim expired on May 10, 2006, under California law and on May 10, 2007, under

15   Illinois law.  This lawsuit was filed in April 2008.  It is therefore time barred.

16         When a Rule 12(b)(6) motion is granted, a party is given leave to amend unless

17   amendment would be futile.  Given the complaint in this case and the proceedings in Illinois, the

18   Court does not see how amendment could cure the statute of limitations issue, and Plaintiff has

19   not requested leave to amend.[9]  The Court can only conclude that amendment would be futile.

20

21         Accordingly, IT IS HEREBY ORDERED that Defendants' motion to dismiss is

22   GRANTED without leave to amend, and the Clerk is to close this case.

23   IT IS SO ORDERED.

24   **Dated:    September 17, 2008**              **/s/ Anthony W. Ishii**
                                      CHIEF UNITED STATES DISTRICT JUDGE

25

26   _____

27        [9]An "issue" includes all factual and legal matters that could have supported the matter that was actually
     raised.  Borders, 142 Cal.App.4th at 1599.  Other than arguing that the statute of limitations began to run in 2007

28   because that is when it knew or should have known that it had a claim, Plaintiff did not argue to the Illinois Court
     that any other form of tolling applied.  See Exhibits B, C, D, E.